UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------x
RONELL JONES,

                                         Plaintiff,

                                                                    **OPINION & ORDER**
          - against -                                               **ON MOTION TO DISMISS**

MICHAEL CAPRA, SUPERINTENDENT,                                       No. 24-CV-5549 (CS)
HEATHER CUSHMAN, CORRECTION
OFFICER, and HOPE VEREEN, CORRECTION
SERGEANT,

                                         Defendants.
---------------------------------------------------------------x

Appearances:

Ronell Jones
Malone, New York
*Pro Se Plaintiff*

Christopher J. Byrne
Assistant Attorney General
New York, New York
*Counsel for Defendants*

Seibel, J.

      Before the Court is the unopposed motion to dismiss of Defendants Michael Capra,

Superintendent of Sing Sing Correctional Facility ("Sing Sing"), Heather Cushman, Correction

Officer ("C.O."), and Hope Vereen, Correction Sergeant ("Sgt."). (ECF No. 34.) For the

following reasons, the motion is GRANTED.

## I.      **BACKGROUND**

      For purposes of the motion, I accept as true the facts, but not the conclusions, set forth in

Plaintiff's initial Complaint, (ECF No. 1 ("Compl.")), and Amended Complaint, (ECF No. 23

("AC")). *See Voltaire v. Westchester Cnty. Dep't of Soc. Servs.*, No. 11-CV-8876, 2016 WL

4540837, at *3 (S.D.N.Y. Aug. 29, 2016) ("[A] court is permitted to consider factual allegations in *pro se* plaintiffs' preceding complaints in order to supplement those in amended complaints."); *Washington v. Westchester Cnty. Dep't of Corr.*, No. 13-CV-5322, 2015 WL 408941, at *1 n.1 (S.D.N.Y. Jan. 30, 2015) (court may consider facts from *pro se* plaintiff's original complaint even if they have not been repeated in amended complaint); *Brown v. Doe*, No. 13-CV-8409, 2014 WL 5461815, at *1 n.1 (S.D.N.Y. Oct. 28, 2014) (considering allegations that "appear in documents attached to the Complaint and in Plaintiff's subsequent letters to the Court" because "[i]n cases where a *pro se* plaintiff is faced with a motion to dismiss, it is appropriate for the court to consider materials outside of the complaint to the extent they are consistent with the allegations in the complaint").[1]

A.    **Facts**

On April 24, 2023, while incarcerated at Sing Sing, Plaintiff was attacked in the B-Block yard during the evening yard run. (AC ¶¶ 13-14.) Plaintiff's attacker, whom Plaintiff does not identify but suggests was part of a gang, (*id.* ¶ 20), was permitted by unidentified persons to enter the yard with a weapon, (*id.* ¶ 16). As a result of the attack, Plaintiff sustained a stab wound to his cheek, which penetrated the inside of his mouth and measured one-half inch by one-half inch. (*Id.* ¶¶ 17-19.) Plaintiff was transported to Westchester Medical Center's emergency department where he received stitches. (Compl. at 3.)

Less than two years prior to the attack at Sing Sing, Plaintiff was attacked on multiple other occasions by gang members at Elmira Correctional Facility ("C.F.") and Wende C.F.,

---

[1] Unless otherwise indicated, all case quotations omit internal citations, quotation marks, alterations and footnotes. All citations to documents submitted by Plaintiff use the page numbers automatically generated by the Court's Electronic Case Filing ("ECF") system, or, where applicable, the paragraph numbers Plaintiff used in his submissions. The Court will send Plaintiff copies of any unreported decisions cited in this Opinion and Order.

where he was previously housed.  (AC ¶ 20; Compl. at 2-3.)  Specifically, Plaintiff was attacked at Elmira C.F. twice on August 19, 2022.  (Compl. at 4.)  Plaintiff alleges that his record would have reflected these prior incidents and shown that he had just been released from Involuntary Protective Custody at Wende C.F.  (AC ¶ 25; Compl. at 3-4.)  Plaintiff alleges that these notations in his file and the pattern of attacks on Plaintiff prior to his arrival at Sing Sing should have put Defendants on notice that he needed protection.  (AC ¶¶ 21, 25; Compl. at 3.)  Plaintiff also alleges that Defendants' lack of appropriate security measures and lack of communication led to the attack at Sing Sing.  (AC ¶ 15.)

At the time of the attack, Defendant Michael Capra was the Superintendent of Sing Sing, Defendant Heather Cushman was a C.O., and Defendant Hope Vereen was a Correction Sgt.  (*Id.* ¶¶ 4-6.)  After Plaintiff's attack, Sgt. Vereen signed an Involuntary Protective Custody Recommendation.  (Compl. at 8.)  On May 4 and May 5, 2023, a hearing was held, and involuntary protective custody was recommended for Plaintiff's safety and the security of the facility.  (*Id.* at 9.)

Following the attack, Plaintiff submitted "formal grievance complaints" through Sing Sing's grievance office, (AC ¶ 10; Compl. at 4), but he alleges that Sing Sing failed to address, respond to, and file his grievances appropriately, (AC ¶ 11; Compl. at 4).  Plaintiff further alleges that generally when he complains to the upper-level grievance officials in Albany about the lack of responses, they either fail to respond in a timely manner or claim to have never received any grievances.  (Compl. at 4.)  Plaintiff attached to his initial Complaint a letter that appears to be a grievance response from February 21, 2024, when Plaintiff was at Sullivan C.F.  (*Id.* at 7.)  The letter instructs Plaintiff to file an appeal with the Incarcerated Grievance Program ("IGP") office at the facility.  (*Id.*)  It is not clear from this document whether this response was related to any

3

grievance Plaintiff filed regarding the April 2023 attack.  Plaintiff also submitted a response from Wende C.F.'s IGP dated October 18, 2022.  (*Id.* at 10.)  That response related to Plaintiff's grievance regarding the attack that occurred on August 19, 2022 at Elmira C.F., and informed Plaintiff that his grievance was untimely.  (*Id.*)

### B.    **Procedural History**

On July 19, 2024, Plaintiff filed a *pro se* complaint, alleging that unidentified officers at Sing Sing failed to protect him from the assault and thus violated his constitutional rights.  (*See* Compl.)  On August 20, 2024, the Court issued an Order of Service, directing the Clerk of Court to substitute Sing Sing Superintendent John Doe with Sing Sing Superintendent Michael Capra and directing the New York State Attorney General's Office ("AG") to ascertain the identity and badge number of each John Doe who was present when Plaintiff was attacked.  (ECF No. 8.)  On October 18, 2024, the AG identified two John Doe Defendants as C.O. Heather Cushman and Sgt. Hope Vereen.  (ECF No. 12.)  Plaintiff filed his AC on March 3, 2025, naming as Defendants Capra, Cushman and Vereen.  (*See* AC.)

On June 12, 2025, Defendants filed a pre-motion letter in anticipation of their motion to dismiss.  (ECF No. 29.)  The Court held a pre-motion conference on July 31, 2025, at which it granted Plaintiff leave to amend his complaint.  (*See* Minute Entry dated July 31, 2025.)  Plaintiff's second amended complaint was due September 2, 2025, but Plaintiff failed to amend by that date.  (*See* ECF No. 32.)  Thus, the Court instructed Defendants to move to dismiss the AC.  (ECF No. 33.)  Plaintiff then failed to oppose the motion to dismiss.  (ECF No. 36.)  The Court discovered that Plaintiff had moved facilities and therefore extended his time to respond to the motion.  (ECF No. 37.)  Nevertheless, Plaintiff again failed to oppose.  (ECF No. 38.)  Accordingly, the Court deems the motion fully submitted.

## II.    <u>LEGAL STANDARD</u>

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.  While Federal Rule of Civil Procedure 8 "marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, . . . it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 678-79.

In considering whether a complaint states a claim upon which relief can be granted, the court "begin[s] by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth," and then determines whether the remaining well-pleaded factual allegations, accepted as true, "plausibly give rise to an entitlement to relief." *Id.* at 679. Deciding whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'shown' – 'that the pleader is entitled to relief.'" *Id.* (quoting Fed. R. Civ. P. 8(a)(2)).

Complaints by *pro se* plaintiffs are to be examined with "special solicitude," *Tracy v. Freshwater*, 623 F.3d 90, 101-02 (2d Cir. 2010), interpreted "to raise the strongest arguments that they suggest," *Burgos v. Hopkins,* 14 F.3d 787, 790 (2d Cir. 1994), and "held to less stringent standards than formal pleadings drafted by lawyers," *Hughes v. Rowe*, 449 U.S. 5, 9 (1980) (*per curiam*).  Nevertheless, "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," and district courts "cannot invent factual allegations" that the plaintiff has not pleaded.  *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010).

## III.    **DISCUSSION**

### A.      **Failure to Exhaust**

Defendants argue Plaintiff failed to exhaust his administrative remedies.  (ECF No. 35 ("Ds' Mem.") at 4-6.)  The Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  Exhaustion is required for "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002).  Exhaustion of available administrative remedies "must be complete prior to commencement of suit" and "[t]he fact that a grievance is filed, or the process is completed, subsequent to commencement of suit will not salvage an otherwise premature filing." *Chalif v. Spitzer*, No. 05-CV-1355, 2008 WL 1848650, at *13 (N.D.N.Y. Apr. 23, 2008).

"The administrative review process requiring exhaustion is defined not by the PLRA, but by the prison grievance process itself – that is, the rules of the particular institution where the

6

inmate is housed govern any assessment of administrative exhaustion." *Rodriguez v. City of N.Y.*, No. 21-CV-1384, 2023 WL 2368985, at *3 (S.D.N.Y. Mar. 6, 2023). For inmates in New York State prison, administrative exhaustion involves compliance with the three-tiered inmate grievance program of the New York State Department of Corrections and Community Supervision ("DOCCS"), in which (1) the prisoner must file a grievance with the Inmate Grievance Resolution Committee ("IGRC") within twenty-one days of the alleged occurrence, (2) the prisoner must then appeal an adverse decision by the IGRC to the superintendent of the facility within seven days after receipt of the IGRC's response, and (3) the prisoner must then appeal an adverse decision by the superintendent to the Central Office Resolution Committee ("CORC") within seven days after receipt of the superintendent's response. *See* N.Y. Comp. Codes R. & Regs. tit. 7, § 701.5; *McGee v. McGready*, No. 16-CV-4187, 2018 WL 2045094, at *2 (S.D.N.Y. Apr. 30, 2018). The program requires the IGRC to resolve the grievance informally or hold a hearing within sixteen days of filing, N.Y. Comp. Codes R. & Regs. tit. 7, § 701.5(b); the superintendent to respond to an appeal within twenty days, *id.* § 701.5(c)(3)(ii); and CORC to respond to an appeal within thirty days, *id.* § 701.5(d)(3)(ii). "[M]atters not decided within the time limits may be appealed to the next step." *Id.* § 701.6(g)(2). Once CORC's thirty-day deadline has elapsed, inmate-plaintiffs are deemed to have exhausted and are free to file suit. *See Hayes v. Dahlke*, 976 F.3d 259, 270-71 (2d Cir. 2020) (prisoner will be considered to have exhausted if CORC does not decide within thirty days).

Exhaustion is an affirmative defense, not a pleading requirement, and thus inmate plaintiffs need not "specially plead or demonstrate exhaustion in their complaints." *Jones v. Bock*, 549 U.S. 199, 216 (2007). Instead, Defendants must demonstrate lack of exhaustion. *See Colón v. N.Y. State Dep't of Corr. & Cmty. Supervision,* No. 15-CV-7432, 2017 WL 4157372, at

*4 (S.D.N.Y. Sept. 15, 2017). "[R]elief may be granted on a Rule 12(b)(6) motion only when failure to exhaust appears on the face of the complaint." *Jamiel v. Viveros*, No. 19-CV-1389, 2020 WL 1847566, at *3 (S.D.N.Y. Apr. 13, 2020); *accord Frederic v. NFC Amenity Mgmt.*, No. 17-CV-5769, 2018 WL 4735715, at *2 (S.D.N.Y. Sept. 28, 2018) ("[E]xhaustion is an affirmative defense and as such can only be a proper basis for a motion to dismiss under Rule 12(b)(6) if failure to exhaust appears on the face of the complaint.").

Defendants argue that Plaintiff has not adequately pleaded that he completed all three steps of the exhaustion process, (Ds' Mem. at 6), but Plaintiff has no obligation to do so. Defendants also contend that Plaintiff has conceded that he did not appeal to the Superintendent of Sing Sing or to the CORC. (*Id.*) In the AC, Plaintiff alleges that he submitted "formal grievance complaints," but Sing Sing failed to "address, respond, and file [his] grievance appropriately." (AC ¶¶ 10-11.) In his Complaint, he also alleged that DOCCS fails to address or respond to Plaintiff's grievances, and when he appeals or complains about this to the upper-level grievance officials in Albany, they either fail to respond or claim they never received his grievance, which hinders his attempts to exhaust. (Compl. at 4.) This allegation appears to be about what generally happens, rather than what happened with this specific grievance.

It is unclear from the allegation that Sing Sing failed to "address, respond, and file [his] grievance appropriately," (AC ¶ 11), whether Plaintiff means he did not receive a response to his grievance or that he did not get the outcome that he wanted. To the extent that Plaintiff alleges he never received a response to his grievance,[2] a lack of response does not excuse a plaintiff's

---

[2] Plaintiff attached to his Complaint a document on which a portion of the text is obscured, but which appears to be a letter response to a grievance filed by Plaintiff or an attempt to appeal. (Compl. at 7.) It is not clear, however, that this response is related to a grievance Plaintiff alleges he filed with respect to the incident at issue here. Indeed, it seems likely it is

failure to appeal.  *See Hilton v. Mahan*, No. 23-CV-209, 2024 WL 6935161, at *5 (N.D.N.Y. Feb. 29, 2024) ("[A]ny failure by the IGRC or the superintendent to timely respond to a grievance or first-level appeal, respectively, can – and must – be appealed to the next level, including the CORC."), *report and recommendation adopted*, 2024 WL 1242263 (N.D.N.Y. Mar. 22, 2024); *Perez v. Furina*, No. 10-CV-518, 2016 WL 1237863, at *8 (N.D.N.Y. Jan. 19, 2016) ("Even assuming that [Plaintiff] had filed a grievance to the IGRC . . ., and the IGRC improperly failed to respond or never received the grievance, [Plaintiff] was required to appeal to the Superintendent."), *report and recommendation adopted*, 2016 WL 1238243 (N.D.N.Y. Mar. 29, 2016); *Lopez v. Cipolini*, 136 F. Supp. 3d 570, 583 (S.D.N.Y. 2015) ("[F]ailing to file an appeal, even when a plaintiff does not receive a response from the IGRP or the Superintendent, does not excuse exhaustion."); *Mamon v. N.Y.C. Dep't of Corr.*, No. 10-CV-8055, 2012 WL 260287, at *4 (S.D.N.Y. Jan. 27, 2012) ("In the Second Circuit, it is well-settled that even when an inmate files a grievance and receives no response, he must nevertheless properly exhaust all appeals before his grievance is considered exhausted.").

Nevertheless, it is not clear here that Plaintiff failed to appeal.  Plaintiff does not allege that he did not appeal this grievance, and the documents he attached do not show that he failed to do so.  Thus, Plaintiff's allegations "are not inconsistent with exhaustion." *Acree v. Hunt*, No. 17-CV-106, 2019 WL 4145604, at *5 (S.D. Ga. Aug. 7, 2019) (allegation that Plaintiff filed a grievance but never got a response not inconsistent with exhaustion), *report and recommendation adopted*, 2019 WL 4166784 (S.D. Ga. Aug. 30, 2019).  And "[a]lthough he

---

not, because the incident here occurred on April 24, 2023, but the response is dated February 21, 2024, and the response is from the Deputy Commissioner of DOCCS, rather than from the IGRC, the superintendent of the facility, or the CORC.  (*See id.*)  Accordingly, this document does not contradict Plaintiff's allegation that he never received a response to his grievance.

does not specifically refer to any appeals of grievances that he may have filed, he is not required to plead the exhaustion of remedies in the complaint." *Toussaint v. Guadarama*, No. 21-CV-32, 2022 WL 19337, at *5 (D. Conn. Jan. 3, 2022) (court could not conclude from face of complaint that plaintiff failed to exhaust where he alleged he filed grievance but did not receive a response); *see Velez v. Guldan*, No. 05-CV-342, 2008 WL 4443269, at *8 (N.D.N.Y. Sept. 26, 2008) ("[I]t is the *defendants' burden* to show that plaintiff has not exhausted his administrative remedies.") (emphasis in original).  Thus, "[d]rawing all reasonable inferences in favor of Plaintiff," as I must, these allegations "do[] not clearly show that Plaintiff failed to appeal the denial of [or lack of response to] his grievance . . . or that he did not otherwise exhaust his remedies under the IGP." *Blandon v. Capra*, No. 17-CV-65, 2017 WL 5624276, at *6 (S.D.N.Y. Nov. 20, 2017) (allegations that plaintiff filed grievance, which was rejected as untimely, and that plaintiff was informed of certain appeal requirements did not show that plaintiff failed to appeal).  Accordingly, because the "failure to exhaust is not clear on the face of the complaint or the accompanying documents," I decline to dismiss the AC on exhaustion grounds.  *Id.* (denying motion to dismiss because it was not clear on face of complaint that plaintiff failed to appeal).

### B.    Failure to State a Claim

Defendants next argue that Plaintiff fails to state a claim for failure to protect because: (1) the allegation that there was a lack of appropriate security measures and communication on the part of Defendants is conclusory, (Ds' Mem. at 2); (2) the AC fails to allege Defendants' personal involvement, (*id.* at 3); and (3) Plaintiff fails to plausibly allege he was incarcerated under conditions posing a substantial risk of serious harm or that Defendants had sufficient culpable intent, (*id.* at 3-4).  Defendants also argue that any claims asserted against Sgt. Vereen

10

in her official capacity are barred by the Eleventh Amendment.  (*Id.* at 6.)  Finally, Defendants argue they are entitled to qualified immunity.  (*Id.* at 6-7.)

The Eighth Amendment, which prohibits cruel and unusual punishment, requires prison officials to "take reasonable measures to guarantee the safety of inmates in their custody." *Hayes v. N.Y.C Dep't of Corr.,* 84 F.3d 614, 620 (2d Cir. 1996) (citing *Farmer v. Brennan,* 511 U.S. 825, 832-33 (1994)).  As such, prison officials have a duty "to protect prisoners from violence at the hands of other prisoners." *Farmer*, 511 U.S. at 833.  But "not . . . every injury suffered by one prisoner at the hands of another . . . translates into constitutional liability for prison officials responsible for the victim's safety." *Id.* at 834.  Instead, "the prisoner must allege actions or omissions sufficient to demonstrate deliberate indifference; mere negligence will not suffice." *Hayes*, 84 F. 3d at 620.

The required showing for deliberate indifference is twofold.  First, a plaintiff must plausibly allege that, objectively, the conditions of his incarceration posed a substantial risk of serious harm. *See Hayes*, 84 F.3d at 620.  Second, the plaintiff must plausibly allege that, subjectively, the defendant acted with sufficient culpable intent. *See Farmer*, 511 U.S. at 834; *McPherson v. Coombe,* 174 F.3d 276, 280 (2d Cir. 1999).  "The second prong of the deliberate indifference test, culpable intent, in turn, involves a two-tier inquiry." *Hayes*, 84 F.3d at 620.  In particular, "a prison official has sufficient culpable intent if he has knowledge that an inmate faces a substantial risk of serious harm[,] and he disregards that risk by failing to take reasonable measures to abate the harm." *Id.*  As the Supreme Court has made clear, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837; *see Price v. Oropallo*, No. 13-CV-563, 2014 WL 4146276, at *8 (N.D.N.Y. Aug. 19, 2014) (to establish deliberate

11

indifference, "a plaintiff must prove that the defendant official actually knew of and disregarded an excessive risk of harm to the plaintiff's safety"). A defendant's knowledge can be established through "inference from circumstantial evidence," including "from the very fact that the risk was obvious." *Farmer*, 511 U.S. at 842; *see Ross v. Corr. Officers John & Jane Does 1-5*, 610 F. App'x 75, 77 (2d Cir. 2015) (summary order) ("Evidence that a risk was obvious or otherwise must have been known to a defendant may be sufficient to make this showing."); *Walker v. Schult*, 717 F.3d 119, 125 (2d Cir. 2013) (to the same effect).

### 1.    Objective Prong

Beginning with the objective prong, "[c]ourts may find a substantial risk of serious harm where there is evidence of a previous altercation between a plaintiff and his attacker, coupled with a complaint by the plaintiff regarding the altercation or a request by the plaintiff to be separated from the attacker." *Dietrich v. County of Orange*, No. 19-CV-10485, 2020 WL 5209816, at *3 (S.D.N.Y. Sept. 1, 2020); *see Mays v. Falu*, No. 18-CV-6145, 2019 WL 6619330, at *7 (S.D.N.Y. Dec. 5, 2019). Similarly, a plaintiff can state a failure-to-protect claim by "alleg[ing] that he informed the prison official about a specific fear of assault and was then assaulted," but "an inmate's communications about generalized safety concerns or vague concerns of future assault by unknown individuals are insufficient to provide knowledge that the inmate is subject to a substantial risk of serious harm." *Marshall v. Griffin*, No. 18-CV-6673, 2020 WL 1244367, at *9 (S.D.N.Y. Mar. 16, 2020). Alternatively, a plaintiff may also demonstrate that he faced an excessive risk of attack "because all prisoners in his situation face[d] such a risk." *Little v. County of Nassau*, 708 F. Supp. 3d 252, 264 (E.D.N.Y. 2023). Factors relevant to determine a substantial risk of harm include "the nature of the prison population with whom the plaintiff was incarcerated, and whether there was specific information

12

ahead of time suggesting that the plaintiff's safety was in jeopardy." *McCormick v. County of Westchester*, No. 19-CV-2916, 2023 WL 2632204, at *5 (S.D.N.Y. Mar. 24, 2023). And while "some courts in [the Second] Circuit have found that suffering severe injuries independently satisfies the objective prong . . . many courts in this Circuit [have] held [that] the focus of inquiry must be, not the extent of the physical injuries sustained in an attack, but rather the existence of a substantial risk of serious harm." *Little*, 708 F. Supp. 3d at 264; *see Delaney v. Westchester Cnty. Dep't of Corr.*, No. 19-CV-3524, 2021 WL 243066, at *2 (S.D.N.Y. Jan. 25, 2021).

Defendant argues that Plaintiff has not plausibly pleaded that he was incarcerated under conditions posing a substantial risk of serious harm because "[h]e does not provide any details of any the assaults alleged, what led to the assaults, or if he reported any prior assaults." (Ds' Mem. at 4.) As noted above, Plaintiff alleges that in April 2023, he was attacked by a member of a gang, (AC ¶ 20), and that he sustained a stab wound to his cheek that punctured the inside of his mouth, (*id.* ¶¶ 17-18). Although Plaintiff does not allege whether he reported any of his prior assaults, he alleges that those assaults were also perpetrated by gang members, (*id.* ¶ 21), and that he had been placed in Involuntary Protective Custody at a prior facility, (Compl. at 4). Thus, Plaintiff provided at least some detail about the assaults.

But he has not alleged that he brought the prior attacks to the attention of anyone at Sing Sing, asked to be separated from any other inmate, or reported any particular safety concern. Nevertheless, because he alleges that his file would have mentioned that he had been attacked before and that he had been in Involuntary Protective Custody, (AC ¶¶ 21, 25; Compl. at 3-4), I assume without deciding that Plaintiff has sufficiently alleged the objective prong. *See Nova v. Martuscello*, No. 24-CV-1574, 2025 WL 2733830, at *6 (S.D.N.Y. Sept. 24, 2025) (unnecessary to decide whether plaintiff satisfied objective prong where he fails to satisfy subjective prong).

### 2.    Subjective Prong

But Plaintiff has not plausibly pleaded that any of the Defendants had sufficient culpable intent, or that they were personally involved in the alleged violation of Plaintiff's rights. Defendants argue that Plaintiff did not plead that Defendants knew of the prior alleged assaults or that Plaintiff was at risk of being assaulted again, or that Defendants deliberately disregarded that risk.  (Ds' Mem. at 4.)  Plaintiff alleges that Defendants should have known that he was at risk of another attack because the paperwork that accompanied him to Sing Sing would have referred to those attacks and his Involuntary Protective Custody at Wende C.F.  (AC ¶¶ 21, 25; Compl. at 3-4.)

The Eighth Amendment requires not just that the Defendants should have known of an excessive risk to an inmate's health or safety, but that the Defendants actually knew of (and disregarded) that risk.  *See Ruiz v. Westchester County*, No. 18-CV-7007, 2020 WL 4340788, at *5 (S.D.N.Y. July 28, 2020).  Thus, it is not sufficient for Plaintiff to allege that Defendants should have known of the risk to his safety based on information in his file.  Even under the more lenient Fourteenth Amendment standard for pre-trial detainees, which requires a plaintiff to plausibly plead only that defendants recklessly failed to act with reasonable care to mitigate an excessive risk of which they knew or should have known, *see Darnell v. Pineiro*, 849 F.3d 17, 35 (2d Cir. 2017), Plaintiff's allegations would fall short.  In *Ruiz v. Westchester County*, decided under the more plaintiff-friendly Fourteenth Amendment standard, the court found that the plaintiff failed to establish the subjective prong where the plaintiff alleged only that the defendant was in possession of a "keep separate list" that named plaintiff and his attacker.  2020 WL 4340788, at *6.  The court concluded that this "vague allegation fail[ed] to plausibly raise an inference that [the defendant] recklessly failed to act with reasonable care or even that he knew,

14

or should have known, that the condition posed an excessive risk to health or safety," because

plaintiff had not alleged that the defendant had actually read the list or knew that he should have

checked it. *See id.* Further, the court noted that there was no allegation that the defendant was

given any indication about the violent history between the two inmates. *See id.* Thus, the court

found that the allegations, without more, constituted negligence, not deliberate indifference. *See*

*id.*

The same is true here. Plaintiff alleges that Defendants should have known about his

prior attacks because they were noted in his file. (Compl. at 3; AC ¶ 25.) But Plaintiff does not

allege that Defendants actually read the reports in his file; rather, he specifically alleges that they

failed to do so. (Compl. at 3.) Plaintiff also does not allege that he informed Defendants about

the prior attacks or voiced any concern to them about his safety at Sing Sing. Nor does he allege

any other means by which Defendants would have come to know about the prior attacks,[3] or that

it was any part of their responsibilities to review the files of incoming inmates. *See Calhoun v.*

*Fischer*, No. 11-CV-567, 2012 WL 4762196, at *4 (W.D.N.Y. Oct. 3, 2012) (dismissing

deliberate indifference claim where no allegation that defendant knew of prior incidents that

occurred over two-year period at other facilities), *appeal dismissed*, No. 12-4433 (2d Cir. Jan.

31, 2013); *cf. Bacon v. Evans*, No. 20-CV-6337, 2021 WL 5643038, at *5 (S.D.N.Y. Dec. 1,

2021) (plaintiff failed to plausibly allege subjective prong of deliberate indifference claim where

plaintiff did not allege defendant was present when inmates made threats or that defendant was

otherwise made aware of threats); *Scott v. Westchester County*, 434 F. Supp. 3d 188, 200-01

---

[3] Plaintiff alleges that other lawsuits he filed in the New York State Court of Claims based upon the attacks at Elmira C.F. should have put Defendants on notice that Plaintiff was at risk of being attacked again. (Compl. at 5.) But it is not plausible that the Defendants in this action would have known about a lawsuit Plaintiff filed against other individuals for events that took place at a different facility than where Defendants worked.

(S.D.N.Y. 2020) (allegations insufficient to plausibly plead personal involvement where plaintiff did not allege any defendant was aware he had requested not to be placed in general population, that he had been previously attacked by member of gang, or of orders of protection).

Moreover, Plaintiff alleges that Defendants "*negligently* allowed plaintiff to walk into the SING SING facility without doing their job and review Plaintiffs file/jacket [*sic*] . . . ." (Compl. at 3 (emphasis added).) Plaintiff's allegation that Defendants acted negligently undermines his claim for deliberate indifference. *See Ruiz*, 2020 WL 4340788, at *6 ("Plaintiff's repeated statements that [Defendant's] failure to review the keep separate list was 'negligent,' further hurt his claim because any § 1983 claim requires proof of a *mens rea* greater than mere negligence."); *Johnson v. Schiff*, No. 17-CV-8000, 2019 WL 4688542, at *12 (S.D.N.Y. Sept. 26, 2019) ("[M]ere negligence is insufficient to state a claim for deliberate indifference."); *Anderson v. Quiros*, No. 18-CV-1107, 2018 WL 3677901, at *3 (D. Conn. Aug. 2, 2018) ("[P]laintiff cannot state an Eighth Amendment claim against [Defendant] for failing to protect him from harm simply by alleging facts showing that he acted negligently in supervising the inmates in the area."); *Rennalls v. Alfredo*, No. 12-CV-5300, 2015 WL 5730332, at *5 (S.D.N.Y. Sept. 30, 2015) ("At most, Plaintiff's claims suggest that [Defendant] was negligent in failing to follow security protocol. Under the second prong of a failure to protect claim, however, a plaintiff must allege a culpable state of mind – mere negligence will not suffice.").

Further, Plaintiff's complaints provide only conclusory and group-pleaded allegations that "Defendants" were deliberately indifferent and responsible for his injuries. (*See* AC ¶¶ 1, 15, 22, 23; Compl. at 3.) Those allegations are insufficient not only because they are conclusory, *see Bowden v. Williams*, No. 18-CV-1698, 2019 WL 109347, at *2 (D. Conn. Jan. 3, 2019) (absent facts showing defendants' knowledge of risk that plaintiff would be attacked, conclusory

and threadbare recital of elements of deliberate indifference cannot sustain claim); *Bell v. Carson*, No. 18-CV-783, 2018 WL 5993686, at *3 (N.D.N.Y. Nov. 15, 2018) (conclusory claim of deliberate indifference absent supporting facts does not suffice), but also because they improperly "lump[] all the defendants together in each claim and provide[] no factual basis to distinguish their conduct," *Tracey v. City of Geneva*, No. 17-CV-6567, 2018 WL 1509355, at *3 (W.D.N.Y. Mar. 26, 2018); *see Anderson v. City of Mount Vernon*, No. 23-CV-3963, 2024 WL 2158390, at *2 (S.D.N.Y. May 13, 2024) (collecting cases). This is not enough to satisfy the *mens rea* prong under the Eighth Amendment.

Additionally, although Plaintiff specifically alleges that Defendants had a "lack of appropriate security measures and communication," (AC ¶ 15), this allegation is vague and conclusory. To the extent that this allegation is based on the fact that Defendants failed to read Plaintiff's file, as explained above, there is no allegation that Defendants were responsible for doing so. And even if they were and failed to do so, that would amount to mere negligence, not deliberate indifference. To the extent this allegation is based on Defendants' failure to put Plaintiff in some form of protective custody, as explained above, Plaintiff has not plausibly alleged Defendants knew of an excessive risk to his safety and disregarded it. Finally, to the extent this allegation is based on the fact that Plaintiff's attacker was "permitted to enter the yard with a weapon," (*id.* ¶ 16), Plaintiff does not allege that any of the Defendants were the ones who allowed this or that they were aware that the attacker had a weapon. Thus, Plaintiff fails to allege that Defendants were personally involved in any violation of his rights. *Cf. Croney v. Dep't of Corr.*, No. 22-CV-1012, 2024 WL 406682, at *2-3 (W.D.N.Y. Feb. 1, 2024) (plaintiff failed to plausibly plead personal involvement in alleged refusal to separate him from other inmate where he only generally stated he had fight with inmate, DOCCS refused to separate him,

17

and he was later attacked by same inmate while two C.O.s were nearby); *see also Ruiz*, 2020 WL 4340788, at *3 ("It is well settled that, in order to establish a defendant's individual liability in a suit brought under § 1983, a plaintiff must show the defendant's personal involvement in the alleged constitutional deprivation."). Even if Defendants were personally involved, there are no facts suggesting that any potential failure to monitor the inmates was deliberate. Plaintiff's allegation again amounts to, at most, an allegation of negligence or dereliction of duty, not of willful or knowing disregard of a specific threat. *See Farmer*, 511 U.S. at 838 ("[A]n official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot . . . be condemned as the infliction of punishment.").

Finally, although in his original Complaint Plaintiff alleged that Superintendent Capra failed to train, supervise, and communicate to staff that Plaintiff had "just been attacked on two prior occasions by gang members [at] Elmira C.F. and [s]hould have been under some form of security watch," (Compl. at 2), as explained, Plaintiff has not alleged any facts rendering it plausible that Superintendent Capra knew that Plaintiff had been attacked at another facility such that he could have communicated this information to his staff. *See Calhoun*, 2012 WL 4762196, at *4 (dismissing claim against superintendent of facility where plaintiff was attacked because plaintiff had not alleged that superintendent was aware of prior incidents at other facilities and disregarded them). And "[v]ague and conclusory allegations that a supervisor has failed to train or properly monitor the actions of subordinate employees will not suffice to establish the requisite personal involvement and support a finding of liability." *Murray v. Goord*, 668 F. Supp. 2d 344, 356 (N.D.N.Y. 2009). "Without any factual allegations tying [Defendant Capra] to the alleged attack, Plaintiff's allegations are purely conclusory." *Ruiz*, 2020 WL 4340788, at *4.

18

In short, the Court finds Plaintiff has not sufficiently alleged facts to satisfy the subjective prong, and, as a result, has also failed to allege the personal involvement required for Defendants. *See Quinn v. Stewart*, No. 10-CV-8692, 2012 WL 1080145, at *2 (S.D.N.Y. Apr. 2, 2012) (adopting report and recommendation that found plaintiff failed to plausibly allege that defendant was personally involved and thus failed to allege that defendant had a sufficiently culpable state of mind). Accordingly, Plaintiff has failed to state a claim for deliberate indifference based on Defendants' failure to protect him from the attack, and it must be dismissed.[4]

## IV.   <u>LEAVE TO AMEND</u>

Leave to amend a complaint should be freely given "when justice so requires." Fed. R. Civ. P. 15(a)(2). "[I]t is within the sound discretion of the district court to grant or deny leave to amend." *Kim v. Kimm*, 884 F.3d 98, 105 (2d Cir. 2018). "Leave to amend, though liberally granted, may properly be denied" for "'repeated failure to cure deficiencies by amendments previously allowed'" or "'futility of amendment,'" among other reasons. *Ruotolo v. City of N.Y.*, 514 F.3d 184, 191 (2d Cir. 2008) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

Plaintiff has already amended once, (ECF No. 23), and was granted a second opportunity to amend yet declined to do so, despite having the benefit of Defendants' pre-motion letter, (ECF No. 29), and the discussion at the July 31, 2025 pre-motion conference during which I explained several of the deficiencies in his AC, (*see* Minute Entry dated July 31, 2025). Generally, a plaintiff's failure to fix deficiencies in the previous pleading, after being provided notice of them,

---

[4] Because I find that Plaintiff failed to state a claim for deliberate indifference against all Defendants, I need not address Defendants' remaining arguments, including that claims brought against Sgt. Vereen in her official capacity are barred by the Eleventh Amendment and that Defendants are entitled to qualified immunity. (*See* Ds' Mem. at 6-7.)

19

is alone sufficient ground to deny leave to amend. *See Nat'l Credit Union Admin. Bd. v. U.S. Bank Nat'l Ass'n*, 898 F.3d 243, 257-58 (2d Cir. 2018) ("When a plaintiff was aware of the deficiencies in his complaint when he first amended, he clearly has no right to a second amendment even if the proposed second amended complaint in fact cures the defects of the first. Simply put, a busy district court need not allow itself to be imposed upon by the presentation of theories *seriatim*."); *Williams v. Time Warner Inc.*, No. 09-CV-2962, 2010 WL 846970, at *7-8 (S.D.N.Y. Mar. 3, 2010) (leave to amend properly denied where plaintiff declined to amend after being advised of arguments for dismissal and complaint's deficiencies), *aff'd*, 440 F. App'x 7 (2d Cir. 2011) (summary order); *In re Eaton Vance Mut. Funds Fee Litig.*, 380 F. Supp. 2d 222, 242 (S.D.N.Y. 2005) (denying leave to amend because "the plaintiffs have had two opportunities to cure the defects in their complaints, including a procedure through which the plaintiffs were provided notice of defects in the Consolidated Amended Complaint by the defendants and given a chance to amend their Consolidated Amended Complaint," and "plaintiffs have not submitted a proposed amended complaint that would cure these pleading defects"), *aff'd sub nom. Bellikoff v. Eaton Vance Corp.*, 481 F.3d 110, 118 (2d Cir. 2007) (*per curiam*) ("[P]laintiffs were not entitled to an advisory opinion from the Court informing them of the deficiencies in the complaint and then an opportunity to cure those deficiencies."); *Elmore v. Atieh*, No. 23-CV-508, 2024 WL 770768, at *2 (N.D.N.Y. Feb. 26, 2024) (denying leave to amend because "the extension of special solicitude to *pro se* litigants requires only *one* . . . opportunity to amend" and plaintiff "failed to cure the defects despite having been given an adequate notice of them and a reasonable opportunity to cure them") (emphasis in original); *see also Solomon v. Fordham Univ. Admin., Rose Hill Campus*, No. 22-887, 2023 WL 5689712, at *3 (2d Cir. Sept. 5, 2023) (summary order) (leave to amend properly denied where *pro se* plaintiff was permitted to amend

20

at least three times and did not persuasively argue why a fourth amendment should be permitted); *Pottetti v. Educ. Credit Mgmt. Corp.*, No. 19-CV-4479, 2020 WL 5645194, at *7 (E.D.N.Y. Sept. 22, 2020) (no need to grant leave to amend where *pro se* plaintiff "has had multiple opportunities to properly state his claims").

Further, Plaintiff has not suggested that he is in possession of facts that would cure the deficiencies identified in this ruling. *See Bank v. Gohealth, LLC*, No. 21-1287, 2022 WL 1132503, at *1 (2d Cir. Apr. 18, 2022) (summary order) ("[W]here the plaintiff is unable to demonstrate that he would be able to amend his complaint in a manner which would survive dismissal, opportunity to replead is rightfully denied."); *TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 505 (2d Cir. 2014) (plaintiff need not be given leave to amend if plaintiff fails to specify how amendment would cure pleading deficiencies in complaint); *Gallop v. Cheney*, 642 F.3d 364, 369 (2d Cir. 2011) (district court did not err in dismissing claim with prejudice in absence of any indication plaintiff could or would provide additional allegations leading to different result); *Horoshko v. Citibank, N.A.*, 373 F.3d 248, 249-50 (2d Cir. 2004) (*per curiam*) (district court did not abuse its discretion by not granting leave to amend where there was no indication as to what might have been added to make complaint viable and plaintiffs did not request leave to amend); *Brown v. N.Y.C. Dep't of Educ.*, No. 20-CV-2424, 2022 WL 4364600, at *4 n.3 (S.D.N.Y. Sept. 21, 2022) (denying leave to amend where *pro se* plaintiff did not provide additional facts to cure identified deficiencies); *see also Todd v. Fields*, No. 20-CV-3608, 2022 WL 596829, at *6 (S.D.N.Y. Feb. 25, 2022) ("While courts should be more lenient when considering a *pro se* party's motion to amend than when considering that of a represented party, leave to amend is properly denied where all indications are that the *pro se* plaintiff will be unable to state a valid claim.").

Accordingly, the Court declines to grant Plaintiff leave to amend *sua sponte*.

## V.      **CONCLUSION**

For the foregoing reasons, Defendants' motion to dismiss is GRANTED.  The Clerk of

Court is respectfully directed to terminate the pending motion, (ECF No. 34), and close the case.

**SO ORDERED.**

Dated: March 16, 2026
         White Plains, New York

_____
CATHY SEIBEL, U.S.D.J.